LOLLEY, J.
 

 | ,In this workers’ compensation claim, defendants, Tango Transport (“Tango”) and its workers’ compensation insurance carrier, Liberty Mutual, appeal the decision of the Office of Workers Compensation, First District East, Parish of Ouachi-ta, State of Louisiana, which found in favor of claimant, Kerry Rainwater. For the following reasons, we affirm.
 

 FACTS
 

 Claimant-appellee, Kerry Rainwater, worked for appellant, Tango, as a long-haul eighteen-wheeler truck driver beginning in August 2007. On January 29, 2008, Rainwater picked up a load of steel bars in Gary, Indiana to take to Laredo, Texas. Because of the wintry conditions, he covered the load with a tarp to protect it from the weather. Outside of Gary, Indiana, the tarp came off the load and Rainwater had to “re-tarp” the load which took close to 45 minutes to complete. According to Rainwater, his hands started to hurt due to the weather exposure. Since his hands still hurt the next day, Rainwater went to Provena Medical Center in Urbana, Illinois. The doctors diagnosed the condition as “pre-frostbite” and Rainwater was told not to work “with [his] hands for two days.” Despite this, Rainwater completed the trip and returned home to Monroe, Louisiana. Rainwater filed a Disputed Claim for Compensation on April 9, 2008.
 

 After a hearing, the Workers’ Compensation Judge (“WCJ”) found that a 12work-related accident occurred; ordered retroactive payment of Total Temporary Disability (“TTD”) benefits from January 29, 2008, through February 2009; and, awarded Supplement Earnings Benefits (“SEBs”) thereafter. The WCJ also found that Rainwater was entitled to medical treatment for his hands. The WCJ awarded penalties in the amount of $2,000.00 for failure to provide medical treatment and $2,000.00 for failure to pay indemnity benefits and attorney’s fees in the amount of $10,000.00. This appeal ensued.
 

 LAW AND DISCUSSION
 

 Work-Related Accident
 

 Factual findings in a workers’ compensation cases are subject to manifest error.
 
 Seal v. Gaylord Corp.,
 
 1997-0688 (La.12/02/97), 704 So.2d 1161. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Stobart v. State through Dept. of Tramp, and Devel
 
 
 *1177
 

 opment,
 
 617 So.2d 880 (La.1993). A plaintiff in a workers’ compensation action has the burden of establishing a work-related accident by a preponderance of the evidence.
 
 Graham v. Nissan,
 
 89,656 (La. App. 2d Cir.06/29/05), 907 So.2d 213.
 

 The worker’s testimony alone may be sufficient to satisfy this burden, | ¡¡provided that two elements are satisfied: first, there must be no other evidence which discredits or casts serious doubt on the worker’s version of the incident; and, second, the worker’s testimony must be corroborated by the testimony of fellow workers, his spouse and other close family members, friends, or the introduction of medical evidence.
 
 Kidd v. Brown Radiator & Frame,
 
 38,729 (La.App. 2d Cir.12/22/04), 890 So.2d 796,
 
 writ denied,
 
 2005-0172 (La.03/24/05), 896 So.2d 1042.
 

 Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ.
 
 Lewis v. Chateau D’Arbonne Nurse Care Center,
 
 38,394 (La. App. 2d Cir.04/07/04), 870 So.2d 515. Furthermore, the question of whether a claimant is entitled to compensation benefits is also a question of fact, and a WCJ’s determination may not be disturbed on appeal absent manifest error.
 
 Jones v. Hollywood Casino Shreveport,
 
 42,819 (La.App. 2d Cir.12/05/07), 972 So.2d 1189.
 

 According to Tango, Rainwater never reported any accident or injury to Tango, nor did he submit any medical bills to his employer or his employer’s workers’ compensation carrier. Tango further contends that the only evidence of a work-related accident is the claimant’s own testimony which is contradicted in several instances. We disagree.
 

 | .[The record reflects that Rainwater testified that while in Laredo, Texas, he called a Tango dispatcher, whom he thought was Enrique Gonzales, to ask for assistance in taking off the tarp on his truck. Rainwater further explained that instead of making the delivery to the customer, he went to Tango’s yard, located in Laredo, for assistance from Tango personnel to help remove the tarps. Tango did not present evidence to refute the actual call to the dispatcher or the stop made at the yard. Tango does assert that Enrique Gonzales, whom Rainwater specifically identified, had been terminated from Tango a month earlier and could not have been the dispatcher-this is not dispositive.
 
 [1]
 
 We find, as the WCJ did, that Rainwater’s testimony was credible. In addition to his testimony, the medical reports from Prove-na Medical Center in Urbana, Illinois corroborate the date of admittance and the diagnosis of “pre-frostbite.” Finally, the termination papers clearly stated:
 

 “driver got frostbite on previous load while tarping. Has not gotten released from doctor and has exceeded days out. Driver was working with risk management and HR to resolve issue.”
 

 This evidence, arguably, rises to the level of an admission by Tango in that the “frostbite” was work-related and the company was on notice. Accordingly, we do |snot find that the WCJ was manifestly erroneous in finding that Rainwater’s injury was compensable.
 

 Tango makes much of the fact that Rainwater submitted his bills to his personal health insurer, not Tango or Liberty Mutual. Rainwater explained his valid reasons, namely that he had already been denied coverage by Tango,
 
 e.g.
 
 the emer
 
 *1178
 
 gency room bills had not been paid, and he needed to mitigate his situation. Again, we do not find Tango’s argument persuasive.
 

 Medical and Compensation Benefits
 

 Rainwater was awarded medical treatment related to his frostbite. Rainwater’s physicians clearly attribute the current limited use of his hands to the frostbite. Tango failed to provide evidence to the contrary. Based on the finding that there was a work-related injury and that Tango was aware of the issue, we agree that Rainwater is entitled to pursue further treatment he was erroneously denied. Furthermore, because he was physically unable to engage in any employment for a period of time, we agree that Rainwater is entitled to TTD benefits beginning January 29, 2008, through the time he found other employment. La. R.S. 23:1221(l)(c).
 

 As a result of the limited use of his hands, Rainwater found employment elsewhere since he did not feel comfortable or safe driving an eighteen-wheeler on Lthe road. SEBs are to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. La. R.S. 23:1221(3)(a). In order to defeat the employee’s claim for SEBs or establish the employee’s earning capacity, employer must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his community or reasonable geographic region.
 
 Lee v. Heritage Manor of Bossier City,
 
 41,858 (La.App. 2d Cir.03/14/07), 954 So.2d 276,
 
 writ denied,
 
 2007-0736 (La.05/18/07), 957 So.2d 157;
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 1996-2840 (La.07/01/97), 696 So.2d 551. Tango failed to present any evidence that Rainwater could perform a certain job, nor did Tango offer him an alternative job. Accordingly, we agree with the WCJ that Rainwater is entitled to SEBs.
 

 Penalties and Attorney’s Fees
 

 Tango also argues that it had articulable and objective reasons for denying payment of benefits to Rainwater, and, as such, should not have been penalized with attorney fees and penalties. We disagree. Penalties and attorney’s fees may be awarded for failure to provide payment of indemnity or medical benefits. La. R.S. 23:1201(F);
 
 Moore v. Transmissions, Inc.,
 
 41,472 (La.App. 2d Cir.09/27/06), 940 So.2d 694. It is a well-established jurisprudential principle that |7the determination of whether an employer is to be assessed attorney’s fees and penalties is a question of fact and the WCJ’s findings shall not be disturbed absent manifest error.
 
 Alford v. Acadian Ambulance Service,
 
 1996-639 (La.App. 3d Cir.11/06/96), 682 So.2d 942.
 

 Here, as the WCJ noted, Tango did not investigate the matter despite the evidence of a “work-related” accident. Tango was clearly identified as the employer/guarantor on the initial emergency room bill in Illinois, which was ultimately denied and sent directly to Rainwater. In fact, the bill indicates there was an “adjustment” to the total amount due in light of workers’ compensation identification. Also, as stated earlier, Rainwater’s discharge papers noted the reasons for his termination specifically that Rainwater “got frostbite on previous load while tarping.” Tango employees at the yard actually saw Rainwater’s situation when he sought help with his load; however, there is nothing in the record evidencing that interviews were conducted.
 

 We also note there are discrepancies as to why Rainwater eventually chose medical leave under the Family Medical Leave Act versus workers’ compensation leave and whether he was misinformed about his op
 
 *1179
 
 tions. We need not investigate this further, since the record clearly indicates that Tango imprudently relied on
 
 other
 
 superficial reasons to prevent Rainwater from receiving the benefits he was ^entitled to. In light of the evidence, we find that the WCJ correctly awarded penalties and attorney’s fees against Tango.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the WCJ’s judgment in its entirety. Costs of this appeal are assessed to Tango Transport.
 

 AFFIRMED.
 

 [1]
 

 . However, there may have been a Reuben Gonzales and an Enrique Sanchez who worked at Tango at the time.